UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

      - v -

MICHAEL LIPKIN and JOSHUA SHAINBERG,

                Defendants.
----------------------------------------------------------X

**DECISION AND ORDER** (Corrected)

CV-99-7357 (VVP)

    Following a jury verdict in favor of the plaintiff and against the defendants Michael Lipkin and Joshua Shainberg, the parties submitted briefing concerning the appropriate relief to be awarded against the defendants. The plaintiff requested four categories of relief: (1) permanent injunctions against both defendants; (2) disgorgement by the defendants of the proceeds of their fraudulent schemes; (3) prejudgment interest; and (4) civil penalties. The defendant Shainberg has submitted opposition to the plaintiff's requests for relief; the defendant Lipkin has not. Upon consideration of the submissions of the parties the court awards the relief set forth below.

*Permanent Injunctions*

    By its verdict the jury found that both defendants engaged in a fraudulent scheme to obtain undisclosed kickbacks in connection with the sale of the stock of Alter Sales Co., Inc., a publicly traded company, and that the defendant Lipkin engaged in a further scheme to make false representations to investors in connection with the sale of that stock. Participation in these schemes constituted violations of section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated under section 10(b).

Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), authorize the Commission to seek, and the court to grant, permanent injunctions "upon a proper showing." *Id*. In addition to proof that the defendants committed a violation of the securities laws in question, a matter established by the jury's verdict, a "proper showing" requires proof that a reasonable likelihood exists that violations will occur in the future. *S.E.C. v. Commonwealth Chemical Securities, Inc.*, 574 F.2d 90, 99-100 (2nd Cir. 1978) (Friendly, J.).[1] Among the factors to be considered when assessing the likelihood of future violations are

> the fact that the defendant has been found liable for illegal conduct; the degree of scienter involved; whether the infraction is an "isolated occurrence;" whether defendant continues to maintain that his past conduct was blameless; and whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated.

*S.E.C. v. Cavanagh*, 155 F.3d 129, 135 (2nd Cir. 1998) (citing *Commonwealth Chemical Securities, Inc.*, 574 F.2d at 100). Finally, in assessing the strength of the showing concerning likelihood of future violations, the court should consider the specific nature of the injunctive relief sought. Thus, the more onerous the burdens imposed by the injunction are, the more persuasive the showing regarding the risk of recurrence should be. *See S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1039 (2nd Cir. 1990).

---

[1]When a preliminary, rather than permanent, injunction is at issue, the Second Circuit has applied a perhaps more stringent standard. Addressing a request for a preliminary injunction in *S.E.C. v. American Bd. of Trade, Inc.*, 751 F.2d 529, 533-34 (2nd Cir. 1984), Judge Friendly articulated the standard as a "strong" rather than "reasonable" likelihood that a violation will occur again in the future. There is logic for applying a somewhat more relaxed "reasonableness" standard when permanent relief is sought, because by then the court has the benefit of a determination by a jury or other fact-finder that the defendant has indeed committed a violation of the securities laws.

Given these considerations, the court has no difficulty concluding that properly limited injunctions are appropriate in this matter. The defendants' violations of the securities laws were systematic and calculated. They involved a high degree of "scienter" as proved by the substantial efforts the defendants took to hide the proceeds they received from the scheme through offshore bank accounts. The occurrences were not isolated, but rather took place continuously over a two-month period. Moreover, the defendants have yet to acknowledge their culpability despite the overwhelming evidence of their involvement in unlawful activity. Indeed, as discussed more fully below, the defendants have continued in their efforts to deceive in their submissions to the court regarding the remedies here at issue. As an officer of a publicly traded company, Shainberg remains in a position to violate securities laws. Although there is no evidence that Lipkin is now active in the securities industry, in contrast to Shainberg he personally made false representations to customers of his brokerage firm in an effort to sell Alter Sales, Inc. Stock, and directed others to do so as well. Finally, the injunctions that will be imposed are not onerous. They simply require that the defendants not break the law, an obligation that they are supposed to observe in any event. Indeed, the defendants themselves do not oppose the request for injunctive relief. Accordingly, the court will issue an order prohibiting the defendants from committing further violations of section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

*Disgorgement*

Disgorgement of unlawfully obtained profits is an appropriate equitable remedy for violations of the securities laws. *See S.E.C. v. Patel*, 61 F.3d 137, 139 (2nd Cir. 1995). Disgorgement serves the purpose of depriving the wrongdoers of the gains of their wrongful conduct. *S.E.C. v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1308 (2d Cir.), *cert. denied*, 404 U.S.

1005, 92 S.Ct. 562, 30 L.Ed.2d 558 (1971). "The district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1474-75 (2nd Cir. 1996) (citing *S.E.C. v. Lorin*, 76 F.3d 76 F.3d 458, 462 (2nd Cir. 1996) (per curiam)). "The amount of disgorgement ordered 'need only be a reasonable approximation of profits causally connected to the violation.'" *Id.* (quoting *Patel*, 61 F.3d at 139).

The evidence at trial established, with great specificity, the proceeds received by Shainberg and Lipkin from the fraudulent schemes. Documentary and testimonial evidence tracked the fraudulently induced sales of Alter Sales, Inc. shares which constituted the kickbacks for their participation in fraudulently promoting that stock. The total received from the sales of the "kickback" stock, as clearly established by various account records, was $277,382.45. Documentary and testimonial evidence further tracked the transmittal of the proceeds to accounts controlled by Shainberg and Lipkin. Most of the proceeds were eventually funnelled to an offshore bank account controlled by Shainberg, from which disbursements were made to individuals and entities for the benefit of both Shainberg and Lipkin. The plaintiff more than met its burden of establishing the amount of the defendants' ill-gotten gains.

Only Shainberg offers argument and evidence in opposition, the thrust of which is an effort to minimize his role in the fraudulent kickback schemes. Thus, he attempts to prove, by offering the affidavit of an individual named Aidan Doyle, that it was not Shainberg, but Doyle, who opened one of the brokerage accounts used in the scheme. He offers the unsworn statement of his codefendant Lipkin to the effect that, in direct contrast to his own and Lipkin's trial testimony, he was not a 50% co-owner of Hubert Rosche Ltd., the brokerage firm he and Lipkin established and used in part to conduct their fraudulent activities. Finally, he argues that in

contrast to Lipkin the jury made no finding that he made false and misleading statements to investors, and that he should therefore be treated more leniently than Lipkin as to the relief ordered.

Shainberg's attempts to minimize his role would be laughable were it not for the brazen and cavalier nonchalance about the truth that they display. Indeed, as Shainberg and Lipkin no doubt realized, had Lipkin actually sworn to the affidavit that Shainberg submitted, they could both be prosecuted for perjury and subornation of perjury based simply on the irreconcilability of the statements made by Lipkin under oath at trial and the statements in the affidavit. *See* 18 U.S.C. 1623(b) ("In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury.") As for Doyle's affidavit, it is entitled to no weight. Shainberg could have called Doyle to testify at trial, where he would have been subject to cross-examination, but did not. It is not hard to see why. Doyle was, and apparently still is, a friend and business associate of Shainberg's who himself participated in sales, probably fraudulent, of Alter Sales, Inc. stock while working for the same firm, Securities Planners, with which Shainberg's firm was affiliated. Moreover, even if Doyle, as opposed to Shainberg, did open the account he claims to have opened, that does not overcome the overwhelming evidence that the proceeds of the fraudulent sales made through that account were ultimately transferred to an offshore bank account over which Shainberg exercised virtually exclusive control. Finally, it is immaterial whether Shainberg himself made false and misleading statements to investors, he only had to have participated in the scheme knowing such statements were being made. The jury's verdict unequivocally found that he did.

Shainberg's efforts to minimize his role, and particularly his willingness to obtain and use false assertions by others, convince the court that stiffer, rather than more lenient, remedies are appropriate.[2] Thus, the court finds that he and Lipkin should be ordered jointly and severally to disgorge the full amount of the kickbacks they obtained.

*Prejudgment Interest*

Prejudgment interest may be awarded at the court's discretion. *First Jersey Securities, Inc.*, 101 F.3d at 1476 (citing *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071-72 (2nd Cir. 1995). The purpose of awarding this remedy, which is particularly appropriate in enforcement actions such as this one, is to strip the wrongdoer of all benefits of his wrongdoing. *See, id.* The factors to be considered include "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Id.* (quoting *Wickham Contracting Co. v. Local Union No. 3*, 955 F.2d 831, 833-34 (2d Cir.), *cert. denied*, 506 U.S. 946 (1992)). The interest rate to be charged is the IRS underpayment rate since that is the cost of borrowing money from the government and therefore best approximates the benefit received from the use of the ill-gotten money. *See id.* The interest should be calculated from the date the ill-gotten gains were received. *Id.*

Considering the above factors, an award of prejudgment interest is appropriate here to accomplish the remedial purpose of the statutes, particularly since the defendants not only refuse to acknowledge their wrongdoing, but continue to engage in efforts to deceive the court. The court has examined the methodology used by the defendants in calculating prejudgment interest,

---

[2]For this reason, the plaintiff's request to strike Shainberg's supplemental response, including the affidavit of Doyle and the unsworn statement of Lipkin, is denied.

which calculates interest on each installment of kickback proceeds from the date the installment was received. The court also approves the compounding of interest quarterly, which is actually generous to the defendants when compared to the IRS's approach which compounds daily. *See* 26 U.S.C. § 6622. Thus the total amount of prejudgment interest through September 30, 2005 is $300,277.36, plus additional interest calculated in the same manner from that date until the submission of the final judgment as ordered below.

## *Civil Penalties*

Both the Securities Act and the Securities Exchange Act authorize the imposition of civil penalties for the conduct in which the defendants engaged. *See* 15 U.S.C. §§ 77t(d) and 78u(d)(3). The penalty provisions of both statutes are identical, and involve a three-tier system, the most serious of which is the third tier. The imposition of third tier penalties, which the plaintiff seeks, requires proof that "the violation . . . involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and that "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C) and 78u(d)(3)(B)(iii). Third tier penalties may be imposed in an amount up to $100,000 for each violation or the gross amount of pecuniary gain obtained by a defendant as a result of the violation. *See id.*

The evidence at trial established both prerequisites for third tier penalties. The violation involved receipt of kickbacks which the defendants fraudulently failed to disclose to buyers, as well as other false and misleading statements made to buyers of Alter Sales, Inc. stock. After the defendants' promotional efforts on behalf of the stock ended, the stock declined precipitously and at least 45 customers lost virtually their entire investments when the stock became practically worthless.

There were potentially at least 45 violations of the securities laws by these defendants because at least 45 customers purchased Alter Sales, Inc. shares during the life of the kickback arrangements. Penalties of $4.5 million (45 x $100,000) for each defendant would be excessive, however. Rather, for purposes of the imposition of penalties the court views each of the two kickback schemes as a separate violation. Because of the seriousness of the violations, however, it is appropriate to impose the maximum penalty of $100,000 on each defendant for each of the two schemes. Thus, each defendant will be ordered to pay $200,000 in civil penalties.

## CONCLUSION

For the foregoing reasons, the court finds that the following remedies are appropriate as against the defendants Michael Lipkin and Joshua Shainberg:

(1) a permanent injunction barring them from further violations of section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated under section 10(b);

(2) disgorgement of the proceeds of their unlawful conduct in the amount of $277,382.45 for which they are jointly and severally liable;

(3) prejudgment interest in the amount of $300,277.36 through September 30, 2005, plus additional interest calculated in the same manner from that date until the date of judgment; and

(4) civil penalties in the amount of $200,000 each.

The plaintiff shall submit a formal judgment in accordance with the foregoing promptly.

SO ORDERED:

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
January 9, 2006